PAUL M. CAPERS, ADMINISTRATOR (ESTATE OF DONNIE J. CAPERS) *v.* WARREN J. LEE ET AL. (15473)

Callahan, C. J., and Borden, Berdon, Katz and McDonald, Js.

Argued September 26—officially released November 26, 1996

*Peter N. Upton*, for the appellant (plaintiff).

*Louis B. Blumenfeld*, with whom was *William J. Scully*, for the appellees (defendants).

KATZ, J. The sole issue on appeal is whether the plaintiff's notice of claim filed with the office of the claims commissioner of the state of Connecticut (claims commissioner), pursuant to General Statutes § 4-147,[1] constitutes an "action" under General Statutes § 52-592[2]

[1] General Statutes § 4-147 provides: "Notice of claim. Filing fees. Any person wishing to present a claim against the state shall file with the clerk of the Office of the Claims Commissioner a notice of claim, in duplicate, containing the following information: (1) The name and address of the claimant; the name and address of his principal, if the claimant is acting in a representative capacity, and the name and address of his attorney, if the claimant is so represented; (2) a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested, and (4) a request for permission to sue the state, if such permission is sought. A notice of claim, if sent by mail, shall be deemed to have been filed with the Office of the Claims Commissioner on the date such notice of claim is postmarked. Claims in excess of five thousand dollars shall be accompanied by a check or money order in the sum of fifty dollars payable to the treasurer, state of Connecticut. Claims for five thousand dollars or less shall be accompanied by a check or money order in the sum of twenty-five dollars payable to the treasurer, state of Connecticut. Fees may be waived by the commissioner for good cause but such action by the commissioner shall not relieve the claimant from the obligation of filing his notice of claim in timely fashion within the statute of limitations under section 4-148. The clerk of the Office of the Claims Commissioner shall promptly deliver a copy of the notice of claim to the attorney general. Such notice shall be for informational purposes only and shall not be subject to any formal or technical requirements, except as may be necessary for clarity of presentation and facility of understanding."

[2] General Statutes § 52-592 provides in pertinent part: "Accidental failure of suit; allowance of new action. (a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or adminis-

so as to save the present wrongful death action, which was commenced more than four years after the alleged incident, from being time barred. We conclude that it does not.

The following facts are undisputed. On February 21, 1995, the plaintiff, Paul M. Capers, administrator of the estate of Donnie J. Capers, filed this complaint in the Superior Court in the judicial district of Hartford-New Britain at Hartford, alleging that on or about June 1, 1990, the plaintiff's decedent had been struck and killed by a motor vehicle owned by the defendant state and used by the department of public safety, the division of the state police, as a police cruiser. According to the plaintiff's allegations, the vehicle, operated in a negligent and careless manner by the defendant Warren J. Lee, while acting in his capacity as an agent, servant or employee of the state police, was insured by the state against personal injury and property damage through a policy maintained by Aetna Life and Casualty Company. The plaintiff alleged that as a consequence of Lee's negligent and careless driving, the plaintiff's decedent sustained multiple fractures and massive internal injuries, the combination of which resulted in his death.

The plaintiff further alleged that, believing it was necessary in accordance with § 4-147, he had filed a notice of claim with the office of the claims commissioner on or about October 18, 1990, seeking money damages and authorization to initiate an action against the state for Lee's negligence.[3] Thereafter, on December

trator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment. . . ."

[3] When the doctrine of sovereign immunity is applicable, the state must consent to be sued in order for a claimant to pursue any monetary claim against the state. *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990). The claims commissioner may waive that immunity pursuant to General Statutes § 4-160 (a) and consent to suit, but until that occurs, the Superior

16, 1994, the claims commissioner granted the defendants' motion to dismiss the claim, concluding that, because General Statutes § 52-556[4] authorized the plaintiff to bring a direct action in the Superior Court against the defendants, General Statutes § 4-142 (2)[5] deprived the claims commissioner of the authority to decide the claim.[6] Accordingly, the claims commissioner dismissed

Court has no jurisdiction to hear any such monetary claim. "In keeping with that premise, the entire legislative scheme of chapter 53, which authorizes claims against the state, makes clear that it is the claims commissioner, pursuant to legislation, that can waive sovereign immunity . . . ." *Krozser* v. *New Haven*, 212 Conn. 415, 424, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990). Indeed, as § 4-160 (a) expressly provides, "[w]hen the claims commissioner deems it just and equitable, he may authorize suit against the state . . . ."

[4] General Statutes § 52-556 provides: "Actions for injuries caused by motor vehicles owned by the state. Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

[5] General Statutes § 4-142 provides: "Claims commissioner. Excepted claims. There shall be a claims commissioner who shall hear and determine all claims against the state except: (1) Claims for the periodic payment of disability, pension, retirement or other employment benefits; (2) claims upon which suit otherwise is authorized by law; (3) claims for which an administrative hearing procedure otherwise is established by law; (4) requests by political subdivisions of the state for the payment of grants in lieu of taxes, and (5) claims for the refund of taxes."

[6] The plaintiff questions the operative effect of § 52-556. In specific, he ponders whether a claimant should bypass the claims commissioner and bring a direct action against the state in light of two substantive requirements of the statute: (1) that the state owned the motor vehicle involved in the accident; (2) and it maintained a policy of liability insurance. The plaintiff suggests that these are conditions precedent that are better addressed by the claims commissioner who can help the injured party to ascertain this information. In this regard, § 52-556 is no different from General Statutes § 13a-144, which imposes liability on the commissioner of motor vehicles for injuries occurring on "any defective highway, bridge or sidewalk which it is the duty of the commissioner . . . to keep in repair . . . ." If the highway is not part of the "state highway system," the question whether it is the commissioner's duty to repair or maintain could, for example, turn on General Statutes § 13b-30 (requiring commissioner of transportation to maintain roads on grounds of state institutions, parks and other agencies). See *Amore* v. *Frankel*, 228 Conn. 358, 367, 636 A.2d 786 (1994). The plaintiff

the claim.[7] On the basis of the dismissal of his claim for want of jurisdiction, the plaintiff brought the present action, specifically invoking the authority of § 52-592, the accidental failure of suit statute, which permits, inter alia, the filing of a new action within one year of the dismissal of the original action for want of jurisdiction.

On May 10, 1995, the defendants moved to dismiss the present action because it had been brought more than four years after the accident in issue.[8] The defendants argued, inter alia, that § 52-592 did not apply because a notice of claim to the claims commissioner is not an "action" within the meaning of that statute. The plaintiff responded that by his notice of claim against the defendant he had commenced suit, thereby falling within the purview of § 52-592. The trial court agreed with the defendants that the plaintiff had not satisfied the requirements of, and therefore could not take advantage of, § 52-592, and dismissed the plaintiff's action as untimely.[9] The plaintiff appealed from the

in such an instance would be expected to set forth the requisite pleadings following an adequate investigation confirming those facts. Id., 368.

In the present case, the plaintiff had a relatively light burden in order to bring a claim under § 52-556. He does not dispute that the state owned and insured the vehicle in question. Had he discovered, however, that the vehicle in issue was not owned or insured by the state, then the action would not have satisfied § 52-556 and would, therefore, be authorized under § 4-142. The decision to impose upon a plaintiff the statutory requirements of § 52-556 is a legislative one, the wisdom of which is not presently before us.

[7] The claims commissioner dismissed the claim without prejudice. He remarked that all parties had been acting in good faith attempting, throughout the time the claim had been pending, to settle the matter within the scope of the fleet policy and the state police professional liability policy. The claims commissioner further opined that § 52-592 would apply in this case to salvage the plaintiff's action, an opinion that is not binding on this court.

[8] The parties do not dispute that the present action was commenced beyond the applicable statute of limitations period. See General Statutes § 52-584.

[9] Because the trial court was called upon to interpret § 52-592 in the context of a motion to dismiss, which admits all well pleaded facts; American Laundry Machinery, Inc. v. State, 190 Conn. 212, 217, 459 A.2d 1031 (1983);

judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The issue before the court is whether the plaintiff has satisfied the requirements of the accidental failure of suit statute so as to be covered by its umbrella. *Isaac v. Mount Sinai Hospital*, 210 Conn. 721, 728–29, 557 A.2d 116 (1989). We focus our attention on the one relevant criterion in dispute: whether the plaintiff's "notice of claim" with the claims commissioner was an "action" within the meaning of § 52-592. We begin with the pertinent provision at issue. Section 52-592 (a) provides: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated . . . for any matter of form . . . the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

and because the plaintiff never questioned whether a motion to dismiss was the proper procedural vehicle, the trial court properly decided the motion on the record alone. *Barde v. Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988). Furthermore, we note that the plaintiff never claimed to the trial court or to this court on appeal that the defendants' motion to dismiss before the trial court was improper because there were equitable factors that would have allowed the plaintiff to circumvent the statute of limitations. Contrary to the suggestion in the dissents, there is no indication in the record of any wrongdoing by the state during the period that the claim was before the claims commissioner that would merit such equitable considerations, and the plaintiff has never suggested the likelihood of any such conduct. Indeed, the plaintiff could not tell this court when the state first asserted that the claims commissioner lacked authority to decide the claim, and despite the dissents' suggestions to the contrary, there is no definitive evidence in the record to say one way or the other whether the state's assertion was made before the statute of limitations on the underlying claim had run.

As we have stated, "[t]he provision is remedial in its character. It was passed to avoid hardships arising from an unbending enforcement of limitation statutes." *Isaac v. Mount Sinai Hospital*, supra, 728. As we have also stated, however, "the extension of time [in § 52-592 is] in terms made applicable to all cases where a *'suit'* seasonably begun [has] failed for the causes stated . . . ." (Emphasis added.) Id., 729–30. Therefore, § 52-592 applies only when there has been an original action that had been commenced in a timely fashion.

Although the term action is not defined within the terms of § 52-592, we have generally defined the term as "the lawful demand of one's right in a *court of justice*; and in this sense it may be said to include any proceeding in such a court for the purpose of obtaining such redress as the law provides." (Emphasis added; internal quotation marks omitted.) Id., 730. By contrast, claim is defined as a "petition for the payment or refund of money by the state or for permission to sue the state." General Statutes § 4-141. When the exceptions of § 4-142 do not apply, General Statutes § 4-160 (a)[10] makes

[10] General Statutes § 4-160 provides in pertinent part: "Authorization of actions against the state. (a) When the claims commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable.

"(b) In each action authorized by the claims commissioner pursuant to subsection (a) of this section or by the general assembly pursuant to section 4-159, the claimant shall allege such authorization and the date on which it was granted. The state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances.

"(c) No such action shall be brought but within one year from the date such authorization to sue is granted. With respect to any claim pending before the claims commissioner on October 1, 1992, or presented to the claims commissioner on or after said date for which authorization to sue is granted, any statute of limitation applicable to such action shall be tolled until the date such authorization to sue is granted. Action shall be brought

it clear that a claimant can only institute an action against the state in a court of justice once the claims commissioner hears the claim; General Statutes § 4-151; causes a record to be made of such claim; General Statutes § 4-153; and authorizes the claimant to sue the state, or suit is permitted by the General Assembly. General Statutes § 4-159. Therefore, a claimant falling outside the exceptions of § 4-142 must bring a claim before commencing an action. That claim is not a demand, a suit or an action in a court of justice but, rather, is a petition seeking permission to proceed with an action against the state in a court of justice.

Furthermore, in an action authorized by the legislature or the claims commissioner, the claimant must allege when authorization to sue was granted; General Statutes § 4-160 (b); because that date triggers the time frame within which the action must be brought. Section 4-160 (c) provides in relevant part: "No such *action* shall be brought but within one year from the date such authorization to sue is granted. With respect to any *claim* pending before the claims commissioner on October 1, 1992, or presented to the claims commissioner on or after said date for which authorization to sue is granted, any statute of limitation applicable to such *action* shall be tolled until the date such authorization to sue is granted. . . ." (Emphasis added.) The use of the word claim in conjunction with the word action in the same subsection of the statute suggests that the legislature "acted with complete awareness of their different meanings"; *Hartford Principals & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 506, 522 A.2d 264 (1987); and that it intended the terms to have different meanings. *Hinchliffe* v.

against the state as party defendant in the judicial district in which the claimant resides or, if the claimant is not a resident of this state, in the judicial district of Hartford-New Britain or in the judicial district in which the claim arose.

"(d) Civil process directed against the state shall be served as provided by section 52-64. . . ."

*American Motors Corp.*, 184 Conn. 607, 613, 440 A.2d 810 (1981) (use of different terms within same sentence of statute "plainly" implies differing meanings intended), aff'd, 192 Conn. 252, 470 A.2d 1216 (1984); see also *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988). Accordingly, we conclude that the terms claim as set forth in § 4-141 and action as contained within § 52-592 have different meanings.

The plaintiff argues, nonetheless, that because the filing of the claim is the necessary first step before a claimant can bring an action against the state, the claims process is "integral to the filing of suit and can only be so understood as an 'action' against the state . . . ." We disagree. Because there was an express waiver of sovereign immunity; see General Statutes § 52-556; the plaintiff was not required to present his claim to the claims commissioner either for payment or authorization to sue the state. Clearly, had the plaintiff's claim not been "authorized by law," or otherwise excepted by § 4-142, he would have been required to file the notice of claim for there to be a waiver of the state's sovereign immunity. *Duguay* v. *Hopkins*, 191 Conn. 222, 232, 464 A.2d 45 (1983). Under those circumstances, however, that notice of claim still would not constitute an action. When, after applying the governing criteria, either the claims commissioner or the General Assembly grants the claimant permission to bring an action against the state, pursuant to §§ 4-159 or 4-160 (a), the claimant cannot merely rely on the earlier filed notice. Rather, the empowered claimant must commence a separate action in the Superior Court using civil process. See General Statutes § 4-160 (d). Without question, the notice of claim does not satisfy the requirements of General Statutes § 52-45a[11] ("Civil actions shall be com-

---

[11] "[A] writ of summons is a statutory prerequisite to the commencement of a civil action. . . . [I]t is an essential element to the validity of the jurisdiction of the court. . . . Although the writ of summons need not be technically perfect, and need not conform exactly to the form set out in

menced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day and the date and place for the filing of an appearance. The writ shall be accompanied by the plaintiff's complaint.").[12]

Furthermore, the legislature has provided a specific road map for claimants whose claims properly belong before the claims commissioner. As stated above, the claimant in his complaint must allege the authorization and the date on which it was provided. General Statutes § 4-160 (b). Regarding claims for which authorization to sue has been granted by October 1, 1992, claimants have one year from the date of authorization to bring an action; with respect to claims pending on October 1, 1992, and to claims presented on or after that date, any statute of limitations applicable to such action is tolled until the date authorization is granted. General Statutes § 4-160 (c). Moreover, claimants will not be foreclosed from subsequently bringing a separate civil action when one is authorized, even when the claims commissioner fails to act in a timely fashion. Consequently, there is no compelling reason to construe the word action in § 52-592 to include a notice of claim as defined by § 4-141. Indeed, to construe the word action as including the notice of claim as argued by the plaintiff

the Practice Book . . . the plaintiff's complaint must contain the basic information and direction normally included in a writ of summons." (Citations omitted.) *Hillman* v. *Greenwich*, 217 Conn. 520, 526, 587 A.2d 99 (1991). A writ of summons, which is part of a citation, must contain a direction to a duly authorized officer to summon the defendant to appear in court on a specific day to answer the complaint. Id., 524–25.

[12] In his argument that a claim constitutes an action under § 52-592, we note that the plaintiff does not draw any distinctions based on the relief sought under § 4-141. In other words, although the plaintiff requested both money damages and permission to sue the state, he does not argue that a claim for money damages is an action under § 52-592 even if a claim for permission to sue is not. Moreover, had the plaintiff advanced such an argument, our analysis of the statutory scheme and the role of the claims commissioner does not suggest that such a distinction should be made.

would have the practical effect of eliminating much of the statutory scheme contained within chapter 53, which was designed to afford adjudication of claims against the state with its permission. See *Hirschfeld* v. *Commissioner of Claims*, 172 Conn. 603, 604, 376 A.2d 71 (1977).

We conclude that because the plaintiff, in order to take advantage of the accidental failure of suit statute, must have commenced an action within the time limited by law and because the claim before the claims commissioner was not an action within the meaning of § 52-592, the trial court properly dismissed the present action.[13]

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN, J., concurred.

BERDON, J., with whom MCDONALD, J., joins, dissenting. This court's narrow reading of General Statutes § 52-592 deprives the plaintiff of his day in court to seek damages for the wrongful death of his decedent. The plaintiff, Paul M. Capers, administrator of the estate of Donnie J. Capers, his decedent, seeks damages from the defendant state of Connecticut for the wrongful death of his decedent who, on June 1, 1990, was struck by a police cruiser allegedly operated at an excessive

---

[13] Justice McDonald's conclusion, in his dissent, that this court should nevertheless reverse the judgment of the trial court as plain error is jurisprudentially unwarranted and unsound. "Plain error is properly reserved for those extraordinary situations where the error is so obvious that the fairness and integrity of and public confidence in the judicial process would be impaired were we to fail to address an issue that was not raised or preserved at trial. *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 671, 594 A.2d 958 (1991); *Skrzypiec* v. *Noonan*, 228 Conn. 1, 14–15, 633 A.2d 716 (1993); *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 68–69, 607 A.2d 431 (1992)." (Internal quotation marks omitted.) *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98, 644 A.2d 325 (1994). This case hardly falls within this limited exception to our requirement that issues must be properly preserved to merit appellate review.

and unreasonable rate of speed by the defendant, Warren J. Lee, a state police officer, while responding to a burglary. The plaintiff filed a claim with the claims commissioner for the state of Connecticut (claims commissioner) dated October 18, 1990. Approximately four years later, after the running of the statute of limitations, the claims commissioner dismissed the claim.

The claims commissioner granted the state's motion to dismiss, holding that General Statutes § 4-142 (2) provides that he did not have jurisdiction to consider a "claim upon which suit otherwise is authorized by law." The claims commissioner concluded that General Statutes § 52-556 authorized a direct action against the state and, as such, deprived him of the authority to hear the claim.

The claims commissioner also found the following: "In dismissing this claim, however, the [claims] commissioner must note that this case was timely filed. No response has been received by the state of Connecticut for some years on this case except that both parties had apprised the [claims] commissioner early on in the case that there would be an attempt to settle this claim within the scope of the fleet policy and the state police professional liability policy.

"Connecticut General Statutes § 52-592 appears to apply in cases such as this where [an action], otherwise authorized, has not been filed for some accidental reason. The claimant in this case was under the impression that the matter was within the jurisdiction of the claims commissioner. There was no action on the part of the [claims] commissioner sua sponte to dismiss this case nor was there action early on by the attorney general's office to have this [case] dismissed. Apparently, all parties believed in good faith that the matter would be settled via insurance coverage prior to the institution of any formal litigation.

"Therefore, although I am dismissing this matter, I'm doing so with full knowledge that the claimant will no doubt proceed to file an action in court directly pursuant to General Statutes § 52-592. If further action is required by this commission, the claimant should so apprise the [claims] commissioner."

The plaintiff brought the present action pursuant to the accidental failure of suit statute, § 52-592, which provides in pertinent part: "(a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because . . . the action has been dismissed for want of jurisdiction . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ."[1] One of the obvious purposes of § 52-592 is to avoid an injustice where the plaintiff has taken a course of action to preserve his or her rights, but the forum in which he or she sought relief was not the correct one. Section 52-592 "by its plain language, is designed to prevent a miscarriage of justice if the plaintiff fails to get a proper day in court due to the various enumerated procedural problems." *Legassey* v. *Shulansky*, 28 Conn. App. 653, 659, 611 A.2d 930 (1992). A justification for allowing this relief is that the defendant is not disadvantaged because the defendant is put on notice within the applicable limitations period that a claim for the incident was being made. Section 52-592 was adopted "to avoid the hardships arising from an unbending enforcement of limitation statutes." *Gallo* v. *G. Fox & Co.*, 148 Conn. 327, 329, 170 A.2d 724 (1961). Indeed, we have long held that § 52-592 "is remedial and is to be liberally interpreted." *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 393, 311 A.2d 74 (1972).

Within the context of these considerations, it must be determined whether the filing of a claim with the

---

[1] See footnote 2 of the majority opinion for the full text of § 52-592 (a).

claims commissioner constitutes an "action" within the meaning of § 52-592. This court has previously stated that "the word 'action' has no precise meaning and the scope of proceedings which will be included within the terms as used in the statutes depends upon the nature and purpose of the particular statute in question." *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 605, 13 A.2d 462 (1940).[2] In my view, the filing of a claim with the claims commissioner, which put the state on formal notice of the plaintiff's claim that he was seeking $7,500,000 in damages for the wrongful death of his decedent and permission to bring an action against the state for those damages, comes within the provisions of § 52-592.

Even under the majority's narrow interpretation of the term action, a claim filed with the claims commissioner would satisfy that definition. The definition of action that the majority adheres to is the lawful demand of one's right in a judicial proceeding. Because the proceedings before the claims commissioner are quasi-judicial, they meet that narrow definition.

"In determining whether a proceeding is quasi-judicial . . . our review is not limited to the label of the

---

[2] In determining that a claim filed before the claims commissioner is not an action under § 52-592, the majority relies heavily on the use of the words "claim" and "action" in General Statutes § 4-160 and on the principle of statutory construction that "[t]he use of different terms within the same sentence of a statute plainly implies that differing meanings were intended." *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 613, 440 A.2d 810 (1981), aff'd, 192 Conn. 252, 470 A.2d 1216 (1984). I agree with this tenet of statutory construction and I would also go further by stating "that the use of different words in the *same enactment* must indicate a difference in legislative intention." (Emphasis added.) *Steadwell* v. *Warden*, 186 Conn. 153, 164, 439 A.2d 1078 (1982). The majority, however, misses the point. These principles of statutory construction apply to the meaning of the words in a specific statute or enactment—in this case § 4-160 (c). It is not the interpretation of the word "action" for purposes of § 4-160 (c) that we must focus on, but, rather, on what the legislature intended "action" to mean in § 52-592. The same words may have a different import depending upon the context of the specific statute.

proceeding, but includes a review of the proceeding itself. The principal factors to be considered 'are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties.' *Kelley* v. *Bonney*, 221 Conn. 549, 567, 606 A.2d 693 (1992); see also *Magnan* v. *Anaconda Industries, Inc.*, 37 Conn. Sup. 38, 43, 429 A.2d 492 (1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984). Further, quasi-judicial is defined as 'the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.' Black's Law Dictionary (6th Ed. 1990)." *Field* v. *Kearns*, 43 Conn. App. 265, 271–72, 682 A.2d 148 (1996). The claims commissioner meets all of these criteria and, therefore, performs quasi-judicial functions.

The claims commissioner's quasi-judicial functions include, among other things, the broad power to: (1) conduct hearings on claims;[3] (2) enact rules of proce-

[3] General Statutes § 4-151 provides: "Hearings. (a) Claims shall be heard as soon as practicable after they are filed. Hearings may be held at the Office of the Claims Commissioner, at any available hearing facility in the state capitol or legislative office building, upon request at any courthouse serving a judicial district or geographical area or city or town hall in the state or at such other suitable place as the claims commissioner finds is convenient and just to the claimant and to the attorney general.

"(b) The claims commissioner may call witnesses, examine and cross-examine any witness, require information not offered by the claimant or the attorney general and stipulate matters to be argued. The claims commissioner shall not be bound by any law or rule of evidence, except as he may provide by his rules.

"(c) The claims commissioner may administer oaths, cause depositions to be taken, issue subpoenas and order inspection and disclosure of books,

dure for those hearings;[4] (3) make findings of fact and render decisions;[5] (4) pay claims in appropriate situations;[6] or (5) make recommendations, in certain situations, to the General Assembly for the payment or rejection of claims.[7] In addition, "[w]hen the claims commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in

papers, records and documents. Upon good cause shown any such order or subpoena may be quashed by the claims commissioner.

"(d) If any person fails to respond to a subpoena, the claims commissioner may issue a capias, directed to the sheriff of the county in which such person resides, to arrest such person and bring him before the claims commissioner to testify.

"(e) If any person refuses to testify or to produce any relevant, unprivileged book, paper, record or document, the claims commissioner shall certify such fact to the attorney general, who shall apply to the superior court for the judicial district in which such person resides for an order compelling compliance. Further refusal of such person shall be punished as provided by section 2-46. If such person is the claimant, the claims commissioner shall summarily dismiss his claim and order it forfeited to the state.

"(f) When subpoenaed by the claims commissioner, witnesses shall be offered the fees and mileage allowances authorized by section 52-260, provided no such fee or allowance shall be paid to any state officer or employee who appears on behalf of the state."

[4] General Statutes § 4-157 provides: "Rules of procedure. The claims commissioner shall adopt regulations in accordance with the provisions of chapter 54, not inconsistent with the policy and provisions of this chapter, governing his proceedings. The regulations shall avoid formal and technical requirements, but shall provide a simple, uniform, expeditious and economical procedure for the presentation and disposition of claims."

[5] General Statutes § 4-154 provides: "Decision; finding of fact. Within ninety days after hearing a claim, the claims commissioner shall render his decision. He shall make a finding of fact for each claim and file such finding with his order or recommendation disposing of the claim. The clerk of the Office of the Claims Commissioner shall deliver a copy of such finding and order or recommendation to the claimant and to the representative for the state, which representative may in appropriate cases be the attorney general."

[6] General Statutes § 4-158 provides in pertinent part: "Jurisdiction of commissioner. Payment of claim. Report to assembly. Waiver of payment on protest to assembly. (a) The claims commissioner may approve immediate payment of just claims not exceeding seven thousand five hundred dollars. . . ."

[7] General Statutes § 4-159 provides in pertinent part: "Recommendations for payments in excess of seven thousand five hundred dollars. Action by general assembly. After hearing, the claims commissioner shall make his

his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a).

In the present case, the plaintiff not only sought permission to bring suit against the state, he also sought *damages*[8] before the claims commissioner. The filing of a claim for damages with the claims commissioner is no different than the filing of a complaint in a court of law for damages with respect to the "lawful demand of one's right." See *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 730, 557 A.2d 116 (1989). The only difference is that the former is quasi-judicial and the latter is judicial, a difference that should not affect the applicability of § 52-592. Accordingly, even under the majority's narrow definition of action, the filing of a claim for damages before the quasi-judicial claims commissioner constitutes an action for the purposes of § 52-592.

Although the record is uncertain as to what occurred between the plaintiff and the state during the four years the matter was pending before the claims commissioner, two facts are certain: the plaintiff filed a timely claim before the claims commissioner, and the state failed to move for dismissal before the claims commissioner until long after the statute of limitations had expired.[9] This is precisely the unjust practice that § 52-592 was designed to remedy by taking the cutting edge off of the limitations period for bringing suit when it serves no purpose other than rewarding a defendant

recommendations to the general assembly for the payment or rejection of amounts exceeding seven thousand five hundred dollars. . . ."

[8] See footnotes 6 and 7.

[9] The majority, in footnote 9, implies that the record is silent as to when the state first brought to the attention of the claims commissioner the fact that he had no jurisdiction to act on the plaintiff's claim. This ignores the claims commissioner's specific findings that the state failed to respond "for some years" and that there was no "action early on by the attorney general's office" to dismiss the plaintiff's claim.

who was never misled and who, in fact, may have participated in misleading the plaintiff.

I respectfully dissent.

MCDONALD, J., dissenting. I agree with Justice Berdon's dissent. I also conclude that the trial court improperly dismissed the present action because the plaintiff failed to commence an action within the time limited by law.

The plaintiff filed a direct action against the state of Connecticut as authorized by General Statutes § 52-556. He cited General Statutes § 52-592, anticipating a defense of the statute of limitations by the defendants. He was not required to cite § 52-592 in order to set forth an action over which the trial court had jurisdiction. *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 391, 311 A.2d 74 (1972). He did so, however, to avoid General Statutes § 52-584, the applicable statute of limitations.

Because the plaintiff anticipated the defense of the statute of limitations and thereby relied on § 52-592, the defendants could have moved to strike the complaint. Practice Book § 152; *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 171–72, 127 A.2d 814 (1956); *Rade-zky* v. *Sargent & Co.*, 77 Conn. 110, 114, 58 A. 709 (1904); *O'Connor* v. *Waterbury*, 69 Conn. 206, 210, 37 A. 499 (1897). Instead, they filed a motion to dismiss. "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court. In contrast, a motion to strike is the proper means of attacking a pleading that on its face is legally insufficient." (Emphasis in original.) *Baskin's Appeal from Probate*, 194 Conn. 635, 640, 484 A.2d 934 (1984).

A motion to dismiss "may only be granted where it clearly appears on the face of the entire record that the

court is without jurisdiction." Id., 639 n.4. Section 52-592 does not confer jurisdiction on the trial court. Rather, the purpose of "the statute [is to extend] the [s]tatute of [l]imitations for a period of one year after the determination of [an] original action." *Ross Realty Corp.* v. *Surkis*, supra, 163 Conn. 393. Section 52-592 was adopted "to avoid the hardships arising from an unbending enforcement of limitation statutes." *Gallo* v. *G. Fox & Co.*, 148 Conn. 327, 329, 170 A.2d 724 (1961). The failure of the plaintiff to satisfy § 52-592, therefore, does not render the trial court without jurisdiction, but merely supports a conclusion that the plaintiff failed to state a legally sufficient cause of action.[1] *Pratt* v. *Old Saybrook*, 225 Conn. 177, 185, 621 A.2d 1322 (1993); see Practice Book §§ 143, 152. The trial court was led to commit plain error when it granted the state's motion because the plaintiff did not satisfy § 52-592. Practice Book § 4061. That action blurs the distinction between a motion to dismiss and a motion to strike. Out of this tangle, the plaintiff has not only lost his day in court as to the merits of his claim but also as to the equity of applying the statute of limitations.

The majority strongly disagrees that this was plain error under § 4061 of the Practice Book. I would find, however, that the error fairly leaps out of the record.

---

[1] If a motion to strike had been granted, the plaintiff could have pleaded over further facts concerning the statute of limitations, such as whether the dismissal of his claim before the claims commissioner, as requested by the state, four years after it was filed and two years after the time limits of § 52-584 had passed, would, in equity, bar the state from raising the defense of the statute of limitations. Although the date when the state made its motion to dismiss before the claims commissioner is not in the record, it is reasonable to conclude that the state did so after the statute of limitations had run. Otherwise, the plaintiff, being alerted, would have brought suit before the statute passed. See *Habetz* v. *Condon*, 224 Conn. 231, 238, 618 A.2d 501 (1992), citing 51 Am. Jur. 2d, Limitation of Actions § 431 (1970) (concerning inequitable resort to statute of limitations); see also Practice Book § 157.

It should embarrass the court to ignore such error. See *Prudence Crandall* v. *State*, 10 Conn. 339, 370 (1834).

Accordingly, I respectfully dissent.