******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., with whom ROBINSON, C. J., joins, dissenting. The majority holds that an action that has been submitted to court-ordered arbitration under General Statutes § 52-549u has been "tried on its merits" within the meaning of General Statutes § 52-592 (a), a savings statute that we have repeatedly stated, since its enactment 160 years ago, must be construed liberally to effectuate its remedial purpose.[1] It is clear to me that the informal arbitration proceeding at issue lacks the formality or procedural protections of a trial, and, therefore, the present case has not been "tried on its merits" under § 52-592 (a). Accordingly, I would reverse the judgment of the Appellate Court and remand the case to the trial court to determine whether the plaintiff, Phyllis Larmel, has satisfied the other condition necessary to qualify for relief under the savings statute.[2]

The majority holds that the plain language of the phrase "tried on its merits" in § 52-592 (a) includes a case resolved by arbitration pursuant to § 52-549u. I have difficulty understanding the basis for this conclusion. It is not supported by any of the dictionary definitions cited in the majority opinion, all of which require that the inquiry or examination proceed "judicially." E.g., Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 1344. On its face, that qualification would appear to *exclude* an arbitration, certainly a nonbinding, informal arbitration conducted by an attorney under § 52-549u.[3] This conclusion finds strong support in the fact that the savings statute applies only to an "action" that has failed to be tried on its merits.[4] See General Statutes § 52-592 (a) ("If any *action*, commenced within the time limited by law, has failed one or more times to be tried on its merits  . . . ." (Emphasis added.)). An "action" in this context means a civil lawsuit, not an arbitration.[5] As far as I am aware, moreover, an action is "tried on its merits" at a *trial*, that is, a formal, binding adjudication presided over by a judge or other official authorized to carry out the judicial function. This is what "tried on its merits" meant around the time that the accidental failure of suit statute was first enacted,[6] and I have no reason to believe that the meaning of the phrase is appreciably different today. I have not seen any lexical or legal authority that would support the majority's contrary view, as a matter of plain language or otherwise.

I agree with the majority that "[t]he question of whether a particular case has been 'tried on its merits' within the meaning of [the accidental failure of suit statute]  . . . turns on the *basis* of the judgment ultimately rendered"; (emphasis in original) footnote 7 of the majority opinion; but I disagree that the *judgment rendered by the trial court* in this case "turned on the

merits of the claims raised" by the plaintiff. The trial court, in fact, never assessed the merits of the plaintiff's claims, and judgment was rendered with absolutely no consideration of the merits. Exactly the opposite occurred—the trial court automatically rendered judgment after the plaintiff failed to file a timely demand for a trial de novo in accordance with General Statutes (Rev. to 2017) § 52-549z. Because the basis of the trial court's judgment was a "procedural [reason] and not on the merits," there is no doubt that Connecticut's accidental failure of suit statute applies. *Holt* v. *KMI-Continental, Inc.*, 95 F.3d 123, 131 (2d Cir. 1996), cert. denied, 520 U.S. 1228, 117 S. Ct. 1819, 137 L. Ed. 2d 1027 (1997).

Indeed, in *Nunno* v. *Wixner*, 257 Conn. 671, 778 A.2d 145 (2001), we expressly held that "[c]ourt-mandated arbitration proceedings pursuant to § 52-549u do not include many of the distinctive hallmarks of a trial"; id., 679; and, therefore, "do not constitute a trial . . . ." Id., 681. *Nunno* enumerates the myriad ways in which an arbitration proceeding is not equivalent to a trial in a civil action, both as a general matter and under the particular procedures applicable to an arbitration under § 52-549u. See id., 678–80.[7] The court in *Nunno* also observed that the actual arbitration procedures followed by the parties in that case, which were essentially the same procedures utilized in the present case, supported the conclusion that the arbitration proceeding was not a trial: "[N]o witnesses testified for either party and no formal exhibits were offered. The parties merely submitted copies of a police report, photographs, transcripts of depositions, medical reports and medical bills. The parties also summarized their respective cases through their counsel. After reviewing all of the information provided, the arbitrator issued his nonbinding award. The arbitration proceedings . . . differed greatly from a trial. The procedures were informal and parties were allowed to present unsworn evidence. None of the rules of evidence applied in this proceeding. In addition, the proceeding was presided over by a nonjudicial officer, whose decision was not binding on the parties. The court-mandated arbitration proceeding . . . case did not constitute a trial." Id., 680–81.

Finally, and importantly, the court in *Nunno* relied on the legislative history of § 52-549u to demonstrate that the legislature did not intend a court-mandated arbitration proceeding to be a trial (or, in the statutory language applicable here, a proceeding in which an "action" has been "tried on its merits"). As the court in *Nunno* observed, the "legislative history demonstrates that the legislature intended these arbitration proceedings to be a form of alternative dispute resolution designed to assist parties to settle cases voluntarily. In 1997, during the course of the legislative debates concerning the enactment of the bill that later amended § 52-549u, the members of the House of Representatives

discussed the purpose of the court-mandated arbitration proceedings. In the course of the debate, Representative Michael P. Lawlor, a proponent of the bill, was asked why the rules of evidence would not apply in these arbitration proceedings. 40 H.R. Proc., Pt. 4, 1997 Sess., p. 1391. Representative Lawlor replied that '[t]his whole process of arbitration is an [alternative] dispute resolution mechanism [that is] intended to avoid unnecessary court delays. *In effect these are the two parties sitting down with an impartial hearing officer to figure out if there is a resolution to the case* [*that*] *would avoid a lengthy and expensive trial. . . .* [*T*]*his is what you might consider an elaborate* [*pretrial*] *discussion.*' . . . Id., pp. 1391–92. Representative Lawlor went on to indicate that the purpose of the legislation was 'essentially trying to encourage as many people as possible to go this route for a relatively small case where there are relatively simple issues at hand.' Id., p. 1393. Representative Lawlor's comments clearly indicate that the legislature did not understand these arbitration proceedings to be a trial, or its equivalent. To the contrary, we conclude[d] [in *Nunno*] that the legislature intended these arbitration proceedings to be a desirable, informal means of resolving disputes *before* trial." (Emphasis in original.) *Nunno* v. *Wixner*, supra, 257 Conn. 682–83. I therefore agree with Justice Eveleigh's dissenting opinion that our holding in *Nunno* effectively dictates the outcome of the present appeal because, under the ineluctable logic and reasoning of that case, "whe[n] an arbitration lacks the formalities and hallmarks of a judicial proceeding, as it does here, pursuant to the statutory scheme of § 52-549 et seq., it cannot constitute a trial." *Larmel* v. *Metro North Commuter Railroad Co.*, 200 Conn. App. 660, 682, 240 A.3d 1056 (2020) (*Eveleigh, J.*, dissenting).

The majority seeks to distinguish *Nunno* on the ground that there is a distinction between the meaning of the word "trial" in our offer of compromise statute, General Statutes § 52-192a, and the phrase "tried on its merits" in our accidental failure of suit statute, § 52-592 (a). I fail to see any meaningful difference between an action being "tried" and the "trial" of an action. Although the word "tried" is a verb and the word "trial" is a noun, they refer to the same thing: an action is "tried on its merits" in a "trial." It is, of course, true that the present case involves § 52-592 rather than § 52-192a, but the fundamental inquiry in both *Nunno* and the present case is the same, namely, whether the legislature intended a court-mandated arbitration proceeding under § 52-549u to constitute a "trial" of the action such that it has been "tried on its merits." The consonance is both logical and meaningful. I cannot imagine an action that results in a recovery for a plaintiff "[a]fter trial"; General Statutes § 52-192a (c); that has not also been tried on its merits. Nor can I envision an action that has been tried on its merits without first having

been decided in a trial.[8]

Contrary to the majority's assertion, the "finality" of the trial court's judgment is not an unacceptable or unwarranted casualty under the circumstances of this case.[9] Indeed, the very purpose and effect of § 52-592 is to remove the finality of any judgment within its scope. Judgment has *always* been rendered against a plaintiff in *every* case in which a second action is reinitiated under § 52-592. The policy embedded in the statute dictates that finality is a concern only if the underlying judgment was rendered after being "tried on its merits." See *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 127, 735 A.2d 782 (1999) ("[i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his *day in court*" (emphasis added; internal quotation marks omitted)); *Contadini* v. *DeVito*, 71 Conn. App. 697, 702, 803 A.2d 423 ("[t]he saving[s] statute has a broad and liberal purpose and ensures the plaintiff *the right to a trial of his claim*" (emphasis added)), cert. denied, 262 Conn. 918, 812 A.2d 862 (2002). Rendering judgment does not transform an action that was not tried on the merits into an action that was tried on the merits. Judgment was not rendered in the present case because the action was tried on the merits; judgment was rendered because the plaintiff's lawyer neglected to timely file a piece of paper demanding a trial on the merits.

Similarly, effectuating the remedial purpose of § 52-592 by permitting a plaintiff to reinitiate an action after judgment does not "undermine the purpose of the twenty day deadline set forth in § 52-549z (d)," as the majority states, any more than it undermines the purposes served by statutes of limitations, sovereign immunity, disciplinary dismissals, or a variety of other filing requirements.[10] See, e.g., *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 46–47, 12 A.3d 885 (2011) (accidental failure of suit statute was applicable to dismissal of medical malpractice action under General Statutes § 52-190a (c) for failure to supply opinion letter authored by similar health care provider, provided failure was "[a] matter of form"); *Ruddock* v. *Burrowes*, 243 Conn. 569, 576, 706 A.2d 967 (1998) ("disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a)"); *Capers* v. *Lee*, 239 Conn. 265, 271, 684 A.2d 696 (1996) (accidental failure of suit statute, which "applies only when there has been an original action that had been commenced in a timely fashion," was enacted "to avoid hardships arising from an unbending enforcement of limitation statutes" (internal quotation marks omitted)); *Lacasse* v. *Burns*, 214 Conn. 464, 470–71, 572 A.2d 357 (1990) (concluding, "on the basis of the language and evident purpose of § 52-592," that statute applies "to the state in the same manner as it would . . . to any other litigant"). As we previously have observed, the language of § 52-592 "is

general and comprehensive. It neither embodies exceptions or reservations, nor suggests any." *Korb* v. *Bridgeport Gas Light Co.*, 91 Conn. 395, 401, 99 A. 1048 (1917).

By all appearances, the legislature's use of the phrase "tried on its merits" in § 52-592 (a) was deliberate and fully informed. Indeed, the relevant language has remained unchanged for more than one century. Far from enacting restrictions, the legislature has expanded the scope of the statute over time.[11] It presumably has done so in recognition of the fact that justice is best served when courts decide cases on their merits. Justice Shea made this point in his concurring opinion in *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207 Conn. 67, 540 A.2d 59 (1988), in which he observed that the "accidental failure of suit statute, permitting a new action to be commenced after the original action has been defeated 'for any matter of form' "; id., 76 (*Shea, J.*, concurring); was designed to ameliorate the harshness of the common law in order for parties to have their cases resolved, not on the basis of the neglect of the lawyer but, rather, on the merits. See id. 75–76 (*Shea, J.*, concurring) ("[b]eginning in the middle of the nineteenth century . . . our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw").

Of course, the remedial purpose of § 52-592 "is not without limits. . . . Even the saving[s] statute does not guarantee that all plaintiffs have the opportunity to have their cases decided on the merits. It merely allows them a limited opportunity to correct certain defects in their actions within a certain period of time." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 355, 63 A.3d 940 (2013). In order to " 'save' [a] deficient [action]" under our accidental failure of suit statute; *Peabody N.E., Inc.* v. *Dept. of Transportation*, supra, 250 Conn. 128; a plaintiff must establish not only that the first action was not "tried on its merits" but also that it was "otherwise avoided or defeated . . . for any matter of form . . . ."[12] General Statutes § 52-592 (a). We have declined to construe the phrase "matter of form" as creating a sharp distinction between matters of procedure and those "of substance . . . embracing the real merits of the controversy between the parties." (Internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 50; see *Lacasse* v. *Burns*, supra, 214 Conn. 472–74. Instead, we have held that whether an action has failed due to a "matter of form" is a "fact-sensitive . . . inquiry," and a plaintiff must be afforded an opportunity to make a factual showing that the failure of the case to be

tried on its merits was due to a "good faith mistake, inadvertence or excusable neglect," as opposed to the "egregious conduct by an attorney or party . . . ." *Plante* v. *Charlotte Hungerford Hospital*, supra, 50–51; see *Ruddock* v. *Burrowes*, supra, 243 Conn. 576 ("[w]hether the [accidental failure of suit] statute applies cannot be decided in a factual vacuum"); see also *Skinner* v. *Doelger*, 99 Conn. App. 540, 554, 915 A.2d 314 (whether prior action failed as "matter of form" "may be conceptualized as a continuum whereupon a case must be properly placed between one extreme of dismissal for mistake and inadvertence, and the other extreme of dismissal for serious misconduct or cumulative transgressions"), cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007).

In the absence of factual findings by the trial court, we cannot determine on appeal whether the plaintiff's failure to file a demand for a trial de novo within twenty days was due to mistake, inadvertence or excusable neglect on the one hand, or egregious conduct on the other. Accordingly, I would remand the case to the trial court for a factual determination as to whether the first action was defeated for a "matter of form" under § 52-592 (a).

I therefore respectfully dissent.

[1] "The first case construing [the accidental failure of suit] statute was *Johnston* v. *Sikes*, 56 Conn. 589 [Super. 1888]. It definitely established that the statute was remedial and should be liberally interpreted." *Baker* v. *Baningoso*, 134 Conn. 382, 386–87, 58 A.2d 5 (1948); see *Johnston* v. *Sikes*, supra, 596 ("a very liberal construction is to be given to the" savings statute). We have liberally interpreted the statute for more than one century. See, e.g., *Dorry* v. *Garden*, 313 Conn. 516, 530, 98 A.3d 55 (2014) (observing that "[§ 52-592] is remedial in nature" and, therefore, "must be afforded a liberal construction in favor of those whom the legislature intended to benefit" (internal quotation marks omitted)); *Ruddock* v. *Burrowes*, 243 Conn. 569, 575, 706 A.2d 967 (1998) (citing "a long line of cases [holding] that § 52-592 (a) is remedial in nature and, therefore, warrants a broad construction"); *Lacasse* v. *Burns*, 214 Conn. 464, 470, 572 A.2d 357 (1990) ("we have consistently held that § 52-592 is remedial in nature and thus, should be broadly and liberally construed").

[2] In addition to establishing that the first action was not "tried on its merits," the plaintiff in the present case would be entitled to the benefit of the savings statute only if she demonstrates that the first action was "avoided or defeated . . . for any matter of form . . . ." General Statutes § 52-592 (a). I discuss this additional requirement later in this dissenting opinion.

[3] Contrary to the majority's assertion, an arbitration held pursuant to § 52-549u is not a "quasi-judicial" proceeding; nor is an arbitrator appointed pursuant to General Statutes § 52-549w "statutorily authorized to carry out functions that are judicial in nature." All attorneys admitted to practice in Connecticut, while in good standing, are commissioners of the Superior Court with the power to "sign writs and subpoenas, take recognizances, administer oaths and take depositions and acknowledgments of deeds," as well as to "issue subpoenas to compel the attendance of witnesses . . . ." General Statutes § 51-85. Although an arbitrator has the power to "determine the admissibility of evidence and the form in which it is to be offered"; General Statutes § 52-549w (c) (3); he or she is not constrained by the rules of evidence in doing so; see Practice Book § 23-63; and, most important, any judgment rendered is of no force or effect if either party rejects it simply by filing a one sentence demand for a trial de novo. The arbitrator thus exercises no true judicial function.

[4] I agree entirely with the majority's statement that the word "try" may be defined "in a broad manner" depending on the context of its usage. See, e.g., *Nixon* v. *United States*, 506 U.S. 224, 228–29, 113 S. Ct. 732, 122 L. Ed.

2d 1 (1993) (construing meaning of "try" in article first, § 3, clause 6, of United States constitution, which provides that " '[t]he Senate shall have the sole Power to *try* all Impeachments' " (emphasis added)). But the context here is provided by § 52-592, the statute under construction, and the legislature did not use the phrase "tried on its merits" in a broad or informal manner therein; instead, the plain language of the statute refers to the formalities attendant to a trial before a judge. Section 52-592 provides in relevant part that a plaintiff "may commence a new *action*" only if the original "*action*" was "commenced within the time limited by law" and "failed . . . to be tried on its merits" due to "any matter of form," such as "insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction . . . ." (Emphasis added.) General Statutes § 52-592 (a). In light of the "basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from the statutory scheme as a whole"; (internal quotation marks omitted) *Wiseman* v. *Armstrong*, 269 Conn. 802, 820, 850 A.2d 114 (2004); we must consider the meaning of the phrase "tried on its merits" in conjunction with the statutory references to actions, statutes of limitations, service of process, and jurisdiction. Construing the statute as a whole, as this court is required to do, it is an inescapable conclusion that the legislature intended the phrase "tried on its merits" to refer to a trial in court, which is where actions are tried in Connecticut.

[5] See, e.g., *Capers* v. *Lee*, 239 Conn. 265, 266–67, 684 A.2d 696 (1996) (notice of claim filed with office of claims commissioner pursuant to General Statutes § 4-147 is not "an 'action' " under § 52-592 (a)); *Bank Building & Equipment Corp.* v. *Architectural Examining Board*, 153 Conn. 121, 124–25, 214 A.2d 377 (1965) (appeal from order of architectural examining board was not "an 'action' " under § 52-592 (a) or "a 'civil action' " under General Statutes § 52-593); *Arute Bros., Inc.* v. *Dept. of Transportation*, 87 Conn. App. 367, 369, 865 A.2d 464 ("[an] arbitration proceeding [under General Statutes § 4-61] is not an action under § 52-592 [a]"), cert. denied, 273 Conn. 918, 871 A.2d 370 (2005).

[6] See, e.g., *Rutkoski* v. *Zalaski*, 90 Conn. 108, 115, 96 A. 365 (1916) (referring to action filed and adjudicated in Superior Court as "tried on its merits"); *Downie* v. *Nettleton*, 61 Conn. 593, 594, 24 A. 977 (1892) (same).

[7] For example, the decision maker is a lawyer, there is no record of the proceedings, and the parties are not bound by the rules of evidence. See Practice Book § 23-63.

[8] The majority states that "the word 'tried' has frequently been used in reference to alternative dispute resolutions outside of a formal trial, including arbitration proceedings." Whatever nomenclature may be used in connection with a formal arbitration, I would be very surprised if any lawyer or judge would describe a case as having been "tried" at an informal, court-mandated arbitration proceeding under § 52-549u.

[9] The majority's reliance on *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 13 A.2d 462 (1940), and its progeny is misplaced because those cases hold that an appeal from an administrative decision is not an "action," as defined by § 52-592 (a), and say nothing about whether the matter has been "tried on its merits." Moreover, the policy interests underlying those cases are inapplicable because the purpose of a court-ordered arbitration under § 52-549u is not to obtain a final determination of disputed issues but to reach a settlement that both parties find acceptable. Unlike the decision of an administrative agency, which must be affirmed on appeal unless "the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion"; (internal quotation marks omitted) *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 669, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001); the decision of the arbitrator "shall become null and void" and "shall not be admissible in any proceeding" after a demand for a trial de novo is filed. General Statutes § 52-549z (b) and (d).

[10] The majority expresses the related concern that effectuating the remedial purpose of § 52-592 in the present case would create "an inequitable result" because a defendant who misses the twenty day deadline cannot obtain relief under the statute. Footnote 8 of the majority opinion. But this result is inherent in a statute that provides a remedy to the plaintiff whose action is defeated without a trial because of a "matter of form" within the meaning of the statute. There are many deadlines that apply to both parties, the violation of which may be fatal to either party's case. For example, failure to comply with the deadlines governing discovery may result in the

entry of a nonsuit or default judgment. See Practice Book § 13-14 (b) (1). Under such circumstances, a defendant's only recourse is to file postjudgment motions (for reconsideration or to open the judgment) or an appeal challenging the judgment, whereas a plaintiff may file a second action under § 52-592 (a) provided that the requirements of the accidental failure of suit statute have been met. See, e.g., *Ruddock* v. *Burrowes*, supra, 243 Conn. 576 ("disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a)"). To the extent that such a result is inequitable, the inequity is consistent with the express language of § 52-592 (a) and the intent of the legislature, and the rectification of any such inequity should come from the legislature, not this court.

[11] See *Baker* v. *Baningoso*, 134 Conn. 382, 386, 58 A.2d 5 (1948) ("[the statute] has been amended repeatedly to cover additional situations but its basic provisions have not been changed"); see also *Broderick* v. *Jackman*, 167 Conn. 96, 98–99, 355 A.2d 234 (1974) (reviewing history of statutory amendments and expansion of "ground[s] [that] could be used as the basis for commencing a new action" under § 52-592 and predecessor statutes). Chief Justice Peters, writing for the court in 1998, interpreted the pattern of legislative expansion to indicate agreement with this court's rule of liberal construction: "Apparently acceding in our assessment of its [remedial] intent, the legislature, over the years, repeatedly has broadened eligibility for the relief afforded by the statute." *Ruddock* v. *Burrowes*, supra, 243 Conn. 575.

[12] For example, an action resolved on the merits by way of summary judgment cannot be reinitiated under § 52-592 (a) because the rendering of summary judgment is not as a "matter of form . . . ." See *Boone* v. *William W. Backus Hospital*, 102 Conn. App. 305, 314, 925 A.2d 432 (plaintiff could not reinitiate second action after rendering of summary judgment because plaintiff's failure to disclose expert witness did not "[amount] to a mistake as a matter of form under § 52-592 (a)"), cert. denied, 284 Conn. 906, 931 A.2d 261 (2007); see also *Hughes* v. *Bemer*, 206 Conn. 491, 495, 538 A.2d 703 (1988) (dismissal of action for failure to file memorandum of law in opposition to motion to strike "is not a matter of form" under § 52-592). I therefore disagree with the majority that, "if the meaning of the phrase 'tried on its merits' is limited to cases in which there has been a formal 'trial,' an action resolved on the merits prior to a court or jury trial, for example, by way of summary judgment, could well be open to relitigation through § 52-592 (a)."