WILLIAM PLANTE, SR., ADMINISTRATOR
(ESTATE OF JOANNE PLANTE), ET AL.
*v.* CHARLOTTE HUNGERFORD
HOSPITAL ET AL.
(SC 18573)
(SC 18574)

Rogers, C. J., and Norcott, Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued October 26, 2010—officially released January 5, 2011*

* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

36

*Bruce E. Newman,* with whom was *Kevin E. Creed,* for the appellants (plaintiffs).

*Janine W. Hodgson,* for the appellees (defendants Peter Bull et al.).

*Michael G. Rigg,* with whom, on the brief, was *Amy F. Goodusky,* for the appellees (named defendant et al.).

*Opinion*

NORCOTT, J. In this appeal, we consider the circumstances under which the accidental failure of suit statute, General Statutes § 52-592 (a),[1] may save an otherwise time barred medical malpractice action commenced after the dismissal of a prior action pursuant to General Statutes (Rev. to 2005) § 52-190a, as amended by Public Acts 2005, No. 05-275, § 2 (P.A. 05-

---

[1] General Statutes § 52-592 (a) provides: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or *the action has been otherwise avoided or defeated* by the death of a party or *for any matter of form*; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." (Emphasis added.)

275),[2] for failure to attach to the complaint a written opinion by a similar health care provider stating that

[2] General Statutes (Rev. to 2005) § 52-190a, as amended by P.A. 05-275, § 2, provides: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate.

"(b) Upon petition to the clerk of the court where the civil action will be filed, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods.

there is evidence of medical negligence (opinion letter). The plaintiffs, William Plante, Sr., individually and as administrator of the estate of the decedent, Joanne Plante,[3] and Adam Plante and William Plante, Jr. (plaintiffs), all relatives of the decedent, appeal from the judgments of the trial court: (1) rendered after a court trial in favor of the defendants Charlotte Hungerford Hospital (hospital), Karen Nash and Eleanor Stutz (hospital defendants); and (2) dismissing the complaint against emergency room physicians Peter Bull and Brian Malone (individual defendants) pursuant to § 52-190a (c). In this consolidated appeal,[4] the plaintiffs contend that: (1) with respect to the hospital defendants, the trial court improperly concluded that the plaintiffs could not bring this action under § 52-592 (a) following the dismissal of the original action pursuant to § 52-190a (c); and (2) because the appeal has been consolidated, reversal of the judgment with respect to the hospital defendants similarly requires reversal of the judgment as to the individual defendants. Given the trial court's unchallenged factual finding that the plaintiffs' initial failure to select an appropriately qualified health care

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

We note that the current revision of § 52-190a also includes certain technical changes enacted into law in 2007 through Public Acts 2007, No. 07-61, § 1. Hereinafter, references to § 52-190a are to the 2005 revision, as amended by P.A. 05-275, § 2.

[3] William Plante, Sr., originally was named as the plaintiff individually and as administrator of the estate of the decedent. Subsequently, the Winchester Probate Court appointed Paul Bialobrzeski, an attorney, as administrator of the estate of the decedent, and Bialobrzeski was substituted in that capacity as plaintiff in this action. The trial court subsequently granted the plaintiffs' motion to substitute Bialobrzeski as plaintiff in this action. The individual claims of William Plante, Sr., Adam Plante and William Plante, Jr., remain pending as well.

[4] The plaintiffs filed separate appeals from the two judgments of the trial court to the Appellate Court. The Appellate Court subsequently consolidated the two appeals pursuant to Practice Book § 61-7 (b) (3), and then Chief Judge Flynn granted the hospital defendants' request for permission to file a separate brief pursuant to § 61-7 (c). Subsequently, we transferred the consolidated appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

provider to review the case for possible malpractice amounted to "blatant and egregious conduct," we conclude that § 52-592 (a) does not save this time barred action. We also conclude that the plaintiffs have abandoned their appellate claims with respect to the individual defendants. Accordingly, we affirm the judgments of the trial court.

The record reveals the following facts and procedural history. On April 26, 2006, the plaintiffs commenced the initial action, alleging in the complaint that the decedent had committed suicide as a result of the professional malpractice of the hospital defendants, specifically Stutz, a psychiatrist, and Nash, a clinical social worker employed by the hospital, and the individual defendants, both emergency room physicians practicing at the hospital. Specifically, the plaintiffs claimed that the various defendants had committed malpractice by prematurely discharging the decedent from the hospital's emergency room, where she had presented on April 30, 2004, experiencing a severe mental health crisis. Shortly thereafter, the hospital defendants moved to dismiss the initial action pursuant to § 52-190a (c) on the ground that the plaintiffs had failed to attach to the complaint the opinion letter required by § 52-190a (a). On July 28, 2006, the plaintiffs filed an objection to the motion to dismiss, along with a certificate of good faith and an opinion letter purportedly from an "experienced and qualified health care professional in a similar field which supports the cause of action." The plaintiffs represented that, "by simple mistake the report, obtained prior to initiating the action, from a qualified health care professional in a similar field was inadvertently not attached to the complaint at the time of service." The opinion letter was, however, dated May 12, 2006, which is a date subsequent to the commencement of the initial action. The trial court, *Alexander, J.*, granted the hospital defendants' motion to dismiss the initial

action on September 1, 2006, but did not issue an oral or written memorandum of decision.

On September 29, 2006, the plaintiffs filed, with leave of the court pursuant to Practice Book § 10-60, an amended complaint in the initial action against the individual defendants that included the requisite good faith certificate and an opinion letter purportedly from a similar health care provider dated April 10, 2006, with the provider's name and qualifications redacted, opining that all of the defendants had been negligent in their treatment of the decedent.[5] Shortly thereafter, the individual defendants moved to dismiss the initial action on the ground that the plaintiffs had failed to attach an opinion letter from a similar health care provider. The trial court, *Brunetti, J.,* denied that motion to dismiss on January 8, 2007.

Thereafter, on December 29, 2006, the plaintiffs commenced this medical malpractice action against the hospital defendants, invoking § 52-592 and claiming in the complaint that the first action against them had been "dismissed without opinion, as a matter of form, on September 1, 2006." Pursuant to § 52-190a (a), the plaintiffs attached to this complaint a certificate of good faith and an opinion letter, dated November 3, 2006, from a physician identified as a board certified psychiatrist licensed to practice in Connecticut and New York.

Subsequently, the trial court, *Pickard, J.,*[6] denied the hospital defendants' motions to dismiss, and subsequently for summary judgment, in which they had claimed that the action was time barred under the appli-

---

[5] The plaintiffs also filed an affidavit from that health care provider stating that she had reviewed the case for malpractice and issued an opinion letter on April 10, 2006, but accidentally had put the wrong date, specifically May 12, 2006, on the opinion letter supplied to counsel.

[6] Unless otherwise noted, all references herein to the trial court are to Judge Pickard.

cable statutes of limitations, General Statutes §§ 52-555[7] and 52-584,[8] as well as the doctrine of res judicata, because the case did not meet the criteria necessary to constitute an "accidental failure of suit" saved by § 52-592 (a). Following discovery and numerous revisions to the operative complaint, the trial court, *Marano, J.*, granted the hospital defendants' motion pursuant to General Statutes § 52-206 and Practice Book § 15-1 to bifurcate the proceedings, and to try the claim that the action was saved by § 52-592 (a) separately from the malpractice claims. Judge Marano further granted the hospital defendants' motion to depose and compel the testimony of Kevin Creed, the plaintiffs' attorney.[9]

Thereafter, a court trial was held on the § 52-592 (a) issue before Judge Pickard, who heard testimony from Grace Williamson, the registered nurse who had authored the opinion letter used in the initial action, and Creed. The trial court found that the plaintiffs had

---

[7] General Statutes § 52-555 provides in relevant part: "(a) In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of. . . ."

[8] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[9] The plaintiffs filed a notice of intent to appeal from Judge Marano's decision compelling the testimony of Creed. They have not, however, challenged that decision in this appeal.

proven that Williamson had "provided . . . Creed with her written memorandum prior to the institution of the first action.[10] Unfortunately for the plaintiff[s], this finding does not result in a favorable outcome for [them] because . . . Williamson is not a 'similar health care provider' to any of the defendants," despite the fact that she "is a pleasant person who had a long nursing career."[11] Discussing the definition of " 'similar health care provider' " under General Statutes § 52-184c,[12]

[10] The trial court credited Williamson's testimony, consistent with her previously filed affidavit; see footnote 5 of this opinion; that the original opinion letter was authored prior to the filing of the action, but subsequently was lost in her office. Williamson explained the date discrepancy on the opinion letter originally filed in the initial action by stating that, when she went to print out a new copy of the opinion letter in response to a request from Creed, she did not realize that her word processing program automatically had changed the date on the document. Thus, the trial court rejected the hospital defendants' argument, founded on the fact that the opinion letter originally provided was dated subsequent to the summons and complaint, that Creed did not have a written opinion by Williamson when he commenced the first action on behalf of the plaintiffs. The trial court further declined to accept the hospital defendants' claim that both Williamson and Creed had "lied in order to cover up . . . Creed's more serious failure to know the requirements of the current law."

[11] The trial court noted Williamson's testimony that she "is a registered nurse who retired in 2002. Her formal medical training consists of a three year nursing degree obtained in 1960. Her experience in psychiatric nursing consists of three months at a hospital in 1960. She has never evaluated a potentially suicidal patient. She last worked in a general hospital in 1979 and in an emergency room in 1974. For the twenty-two years prior to her retirement, she worked in a nursing home and rehabilitation facility."

[12] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal·injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a

which is cross-referenced in § 52-190a (a), the trial court concluded that Williamson was not a board certified physician and, therefore, not a similar health care provider under § 52-184c (c) with respect to Stutz, a board certified psychiatrist. With respect to Nash, the trial court concluded that Williamson was not a similar health care provider under the applicable statutory definition of § 52-184c (b) because she "is not licensed as a social worker, nor was she trained in the same discipline, nor was she active in the practice or teaching of crisis work within the five year period before the incident." The trial court similarly concluded that, with respect to the hospital itself, Williamson was not qualified to render an opinion as to its vicarious liability with respect to Stutz or Nash, and also was "not qualified in any way to render an opinion about the alleged indepen-

---

medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

dent negligence of the hospital for facility or staffing inadequacies." The trial court summarized by calling "the memorandum of . . . Williamson received by . . . Creed prior to the institution of the first action . . . worthless as the opinion of a similar health care provider. There are, undoubtedly, cases in which it is a close call as to whether an author of a presuit opinion is a similar health care provider. This is not such a case." Citing *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 943 A.2d 544 (2008), the trial court concluded, therefore, that Judge Alexander had properly dismissed the initial action against the hospital defendants, notwithstanding the fact that she "did not have the benefit of knowing the identity and lack of qualifications of the author of the memorandum."

Turning to the statutory issue that is the principal subject of this appeal, the trial court next concluded that the deficiency under § 52-190a (a) was not a "matter of form" entitling the plaintiffs to invoke § 52-592 and bring a new action following the dismissal of the first action after the expiration of the relevant statutes of limitations. The trial court found that the plaintiffs "had not made a reasonable precomplaint inquiry at the time the first action was commenced . . . because [they] had not received an opinion from a similar health care provider." The trial court concluded that, "[a]lthough § 52-592 is remedial in nature and must be read broadly, the dismissal of the first action in this case cannot be found to be a matter of form. *The decision to engage . . . Williamson to review the file and to provide a written opinion of negligence is inexplicable.* Even a cursory reading of § 52-190a would have revealed that . . . Williamson did not qualify as a similar health care provider. Section 52-592 is designed to aid the diligent suitor. See *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 733, 557 A.2d 116 (1989). *The plaintiffs' lack of diligence in selecting an appropriate person or persons*

*to review the case for malpractice can only be characterized as blatant and egregious conduct* which was never intended to be condoned and sanctioned by the 'matter of form' provision of § 52-592." (Emphasis added.) Accordingly, the trial court rendered judgment for the hospital defendants.

After the trial court rendered judgment for the hospital defendants, the individual defendants filed a second motion to dismiss the initial action pursuant to § 52-190a (c), claiming that Williamson was not a similar health care provider authorized to provide an opinion letter against them under § 52-190a (a). In a memorandum of decision issued on May 20, 2009, the trial court granted that motion to dismiss because Williamson "is not even a physician," and there is "no way that anyone could argue that [she] is a 'similar health care provider.'" This consolidated appeal followed. See footnote 4 of this opinion.

On appeal, the plaintiffs rely on *Cataldo* v. *Zuccala*, Superior Court, judicial district of Danbury, Docket No. CV 08-5004961-S (August 11, 2009), as well as the legislative history of § 52-190a, and claim that dismissal of the original action on the basis of the inadequate opinion letter pursuant to § 52-190a (c) was jurisdictional in nature and, therefore, the trial court should have permitted them to commence this action pursuant to the accidental failure of suit statute, § 52-592 (a). The plaintiffs further contend that the trial court improperly analyzed this case using case law applying § 52-592 (a) in the context of disciplinary dismissals, such as *Ruddock* v. *Burrowes*, 243 Conn. 569, 706 A.2d 967 (1998), because those decisions apply only to a lack of due diligence in prosecuting the action itself, rather than to deficiencies in a prelitigation investigation. The plaintiffs rely further on *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 721, and contend that their failure to append a letter from a similar health care provider was a curable

defect that is a matter of form under § 52-592 (a), because they otherwise had met the "basic elements of commencing the prior action."

In response, the hospital defendants contend first that the "want of jurisdiction" provision of § 52-592 (a) is inapplicable because, under *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009), compliance with § 52-190a is not subject matter jurisdictional in nature.[13] Relying further on *Votre*, the hospital defendants contend that the matter of form provision of § 52-592 (a) should not be used to circumvent the automatic ninety day extension to the statute of limitations provided by § 52-190a (b), by providing an automatic one year extension to plaintiffs who have unreasonably commenced an action without benefit of an opinion of malpractice from a similar health care provider. The hospital defendants then cite, inter alia, *Ruddock* v. *Burrowes*, supra, 243 Conn. 569, and *Lacasse* v. *Burns*, 214 Conn. 464, 572 A.2d 357 (1990), and note the trial court's unchallenged findings with respect to the egregious nature of the plaintiffs' lapse in relying on the opinion letter authored by Williamson. The hospital defendants contend further that the matter of form provision of § 52-592 (a) is intended to aid the "diligent suitor" and excuses only "mistake, inadvertence or excusable neglect." We agree with the hospital defendants and conclude that, when a medical malpractice action has been dismissed pursuant to § 52-190a (c) for failure to supply an opinion letter by a similar health care provider required by § 52-190a (a), a plaintiff may commence an otherwise time barred new action

---

[13] The hospital defendants also note the categorical nature of the plaintiffs' arguments, given their failure to challenge the trial court's factual findings, and posit that the plaintiffs "appear to argue that § 52-592 should be interpreted . . . as always permitting a plaintiff to refile an action that was dismissed [under] § 52-190a, regardless of the egregiousness of a plaintiff's behavior in causing the dismissal."

pursuant to the matter of form provision of § 52-592 (a) only if that failure was caused by a simple mistake or omission, rather than egregious conduct or gross negligence attributable to the plaintiff or his attorney.

Given the plaintiffs' failure to challenge the trial court's factual findings, the principal issue in this appeal, namely, the applicability of § 52-592 (a) to dismissals pursuant to § 52-190a (c), is a question of statutory construction, over which our review is plenary. *Tayco Corp.* v. *Planning & Zoning Commission,* 294 Conn. 673, 679, 986 A.2d 290 (2010). Thus, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id.

We begin with the plaintiffs' claim that they are entitled to relief under § 52-592 (a) because the original action was dismissed for jurisdictional reasons. We disagree. As discussed in greater detail in our decision in the companion case, *Bennett* v. *New Milford Hospital, Inc.,* 300 Conn. 1, 12 A.3d 865 (2011), also released today, we agree with the Appellate Court's decision in *Votre* v. *County Obstetrics & Gynecology Group, P.C.,* supra, 113 Conn. App. 583, that a "plaintiff's failure to

comply with the requirements of § 52-190a (a) does not destroy the court's subject matter jurisdiction over the claim; it does not affect the power of the court to hear her medical malpractice action." See also *Bennett* v. *New Milford Hospital, Inc.*, supra, 26–27 (no indication in legislative history that amendment of § 52-190a was intended to alter conclusion in *LeConche* v. *Elligers*, 215 Conn. 701, 710–11, 579 A.2d 1 [1990], that prelitigation requirements are not subject matter jurisdictional in nature); *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 583–84 ("dismissal pursuant to [§ 52-190a (c)] is a statutory remedy for any defendant who is subject to a legal action in which the statutorily required written opinion is not annexed to the complaint or initial pleading"); *Rios* v. *CCMC Corp.*, supra, 106 Conn. App. 821 n.8 ("motions to dismiss are [not] limited to jurisdictional challenges").[14] Accordingly, any relief for the plaintiffs in this case must lie under the matter of form provision of § 52-592 (a).[15]

---

[14] The plaintiffs' reliance on *Dias* v. *Grady*, 292 Conn. 350, 972 A.2d 715 (2009), for the proposition that, under § 52-190a, the certificate of good faith and opinion letter are "a new jurisdictional requirement . . . imposed on individuals bringing medical malpractice actions," is puzzling. Put simply, including the quoted portions of the opinion that appear in the plaintiffs' brief, there is nothing in the *Dias* opinion, wherein we concluded that the opinion letter itself need only address the breach of the standard of care, rather than causation matters; see id., 359–60; that pertains to subject matter jurisdiction.

[15] We address briefly the plaintiffs' reliance on *Cataldo* v. *Zuccala*, supra, Superior Court, Docket No. CV 08-5004961-S. In that case, the trial court, now Justice Eveleigh, previously had dismissed the initial action because of the plaintiff's "failure to attach a written opinion of an individual who qualified as a similar health care provider" and, specifically, the attachment of an opinion letter from a physician who was not a similar health care provider. Without benefit of *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 569, Judge Eveleigh had concluded that the defect was subject matter jurisdictional in nature. The plaintiff then brought the second action pursuant to § 52-592 (a). Denying the motion to dismiss, the trial court, *Shaban, J.*, concluded that, because Judge Eveleigh had expressly dismissed the first action for lack of subject matter jurisdiction, "the plaintiff was justifiably entitled to rely on the articulated basis of the dismissal . . . for the purpose of invoking § 52-592." Judge Shaban did not,

Thus, we next turn to whether dismissal for the failure to supply an opinion letter authored by a similar health care provider is a matter of form subject to being saved by the accidental failure of suit statute, § 52-592 (a), which presents an issue of first impression for this court. We begin with the threshold determination that § 52-592 (a) is ambiguous about what constitutes a matter of form, thus permitting resort to the full panoply of extratextual sources as we seek to reconcile its relationship with § 52-190a. Thus, we note that the accidental failure of suit statute, now codified as § 52-592, originally was enacted in 1862; Public Acts 1862, c. 14; see *Baker* v. *Baningoso*, 134 Conn. 382, 386, 58 A.2d 5 (1948); "to avoid the hardships arising from an unbending enforcement of limitation statutes." (Internal quotation marks omitted.) *Hughes* v. *Bemer*, 206 Conn. 491, 495, 538 A.2d 703 (1988). Although there is no relevant printed legislative history about § 52-592 due to its age; see, e.g., *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 121–22, 735 A.2d 782 (1999); it is well established in our long line of case law interpreting the statute in other contexts that § 52-592 (a) "is remedial and is to be liberally interpreted." (Internal quotation marks omitted.) *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 728.

In previous cases considering the application of the accidental failure of suit statute, we have declined to

however, address whether Judge Eveleigh's dismissal of the initial action constituted a matter of form, relying only on the "want of jurisdiction" provision under § 52-592 (a). Thus, *Cataldo* is of limited guidance in this appeal.

Similarly, we disagree with the plaintiffs' reliance on *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 721. In *Isaac*, this court concluded that § 52-592 applied to save an otherwise time barred wrongful death action brought by the administrator of an estate, after the original action had been dismissed for lack of subject matter jurisdiction pursuant to § 52-555 because the plaintiff had not formally been named administrator of the estate at the time she brought the original action. Id., 732–33. *Isaac* is further inapposite because this court made clear therein that it was not considering whether that dismissal was as a "matter of form." Id., 733.

adopt an extremely broad construction of the statute to the effect that, "[t]he phrase, 'any matter of form,' was used in [contradistinction] to matter of substance, as embracing the real merits of the controversy between the parties." *Johnston* v. *Sikes*, 56 Conn. 589, 592 (Superior Court 1888) (*Loomis, J.*); see *Lacasse* v. *Burns*, supra, 214 Conn. 472–73. Rather, we have emphasized that § 52-592 (a) "does not authorize the reinitiation of all actions not tried on . . . [their] merits," and that, "[i]n cases where we have either stated or intimated that the any matter of form portion of § 52-592 would not be applicable to a subsequent action brought by a plaintiff, we have concluded that the failure of the case to be tried on its merits had not resulted from accident or even simple negligence."[16] (Internal quotation marks omitted.) *Lacasse* v. *Burns*, supra, 473.

In concluding that even "disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a)," we have noted the fact-sensitive nature of the inquiry and held that, "[t]o enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a 'matter of form' in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as *mistake, inadvertence or excusable neglect.*"[17] (Emphasis added.) *Ruddock* v.

[16] "See *Hughes* v. *Bemer,* supra, [206 Conn.] 495 (failure to file a required memorandum of law operates as a consent to judgment on the merits resulting from granting a motion to strike); *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 144, 470 A.2d 246 (1984) (dismissal pursuant to Practice Book § 231 [now § 13-14] for deliberate refusal to answer questions at deposition); *Parrott* v. *Meacham,* 161 Conn. 573, 575, 290 A.2d 335 (1971) (voluntary withdrawal of prior suit); *Baker* v. *Baningoso,* [supra, 134 Conn. 387] (voluntary withdrawal of prior suit)." *Lacasse* v. *Burns,* supra, 214 Conn. 473.

[17] In the disciplinary dismissal context, we observed that, "[a] trial court, for example, might find an attorney's misconduct to be egregious if the attorney represented that his nonappearance was caused by difficulties with his car without disclosing that he had ready access to alternative

*Burrowes,* supra, 243 Conn. 576–77. Indeed, even in the disciplinary context, only "egregious" conduct will "bar recourse to § 52-592." Id., 576; see also id., 576 n.11 ("[t]he fact that courts have allowed plaintiffs access to § 52-592 [a] in some cases involving [Practice Book § 251, now § 14-3] dismissals does not mean that we must allow recourse to the statute if the attorney's misconduct is egregious"). Thus, in *Ruddock,* we ordered the trial court on remand to make findings of fact with respect to "the circumstances of the plaintiffs' claimed justification for nonappearance at the pretrial conference." Id., 578; see also, e.g., *Vestuti* v. *Miller,* 124 Conn. App. 138, 146–47, 3 A.3d 1046 (2010) (trial court improperly granted defendant's motion for summary judgment because "[w]ithout . . . appropriately weighing the evidence and determining credibility, there is an insufficient evidentiary basis for this case [arising from the failure of the plaintiff's attorney to attend a pretrial conference] to be accurately placed on the § 52-592 continuum").

Despite the plaintiffs' arguments to the contrary, Connecticut case law limiting the application of § 52-592 (a) to cases of good faith mistake, inadvertence or excusable neglect, and precluding it in cases of egregious conduct by an attorney or party, has been applied beyond the context of disciplinary dismissals. See *Rosario* v. *Hasak,* 50 Conn. App. 632, 638–39, 718 A.2d 505 (1998) (failure to return complaint in original action for

transportation. A trial court might make a similar finding if, in one case, the attorney repeatedly, and without credible excuse, delayed scheduled court proceedings. Nonappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties, are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § 251 [now § 14-3]; see *Lacasse* v. *Burns,* supra, 214 Conn. 474; or a single failure to appear, in a timely fashion, after a luncheon recess. See *Gionfrido* v. *Wharf Realty, Inc.,* [193 Conn. 28, 34 n.6, 474 A.2d 787 (1983)]." *Ruddock* v. *Burrowes,* supra, 243 Conn. 576 n.12.

more than two years after service was "egregious and blatant conduct" precluding plaintiff from commencing new action pursuant to § 52-592 [a] following dismissal of original action); *Santorso* v. *Bristol Hospital*, Superior Court, judicial district of New Britain, Docket No. CV 08-5009160 (March 17, 2010) ("whether the termination of the earlier action was disciplinary or nondisciplinary in nature, one of the factors a court must consider in applying [§ 52-190a (a)] is the conduct of counsel in the original action"). Thus, we find instructive decisions of our sister states concluding that their savings statutes may be invoked when the original complaints in medical malpractice cases, otherwise filed in good faith, have been dismissed based on technical failures with respect to required notice and merit certificates. See *Pringle* v. *Kramer*, 40 So. 3d 516, 519 (Miss. 2010) (state savings statute applicable to dismissals based on matter of form applies to dismissal for failure to give mandated prelitigation notice in medical malpractice case when that failure was not result of "bad faith," defined as, inter alia, "gross negligence" and "indifference" [internal quotation marks omitted]); *Davis* v. *Mound View Health Care, Inc.*, 220 W. Va. 28, 32, 640 S.E.2d 91 (2006) (medical malpractice case dismissed because of insufficient prelitigation notice or certificate of merit may be refiled pursuant to savings statute when party has "demonstrated a good faith and reasonable effort to further the statutory purposes of preventing the making and filing of frivolous medical malpractice claims and lawsuits" [internal quotation marks omitted]); cf. *Brisson* v. *Santoriello*, 351 N.C. 589, 597, 528 S.E.2d 568 (2000) (plaintiff may refile voluntarily dismissed medical malpractice action pursuant to savings rule when initial action, although procedurally defective for failure to append affidavit of merit, was not brought in "bad faith," such as with no intent to pursue action).

Turning to the present case, the determination of whether the plaintiffs' failure to supply an opinion letter authored by a similar health care provider was "egregious" conduct precluding resort to § 52-592 (a) requires consideration of the policies underlying § 52-190a. Responding to "significant and continued increases in malpractice insurance premiums by reforming aspects of tort law, the insurance system and the public health regulatory system," the legislature enacted P.A. 05-275, which expanded on § 52-190a, originally enacted as part of the Tort Reform Act of 1986, Public Acts 1986, No. 86-338, § 12. *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 17–18. Intended to protect health care providers from frivolous malpractice actions, P.A. 05-275 amended "§ 52-190a (a) to include a provision requiring the plaintiff in a medical malpractice action to obtain the written opinion of a similar health care provider that 'there appears to be evidence of medical negligence' and to attach the opinion to the certificate of good faith to be filed with the complaint. . . . In addition, the amendment provided that the failure to file the written opinion would be grounds for dismissal of the complaint."[18] (Citation omitted.) *Dias* v. *Grady*, 292 Conn. 350, 357, 972 A.2d 715 (2009). "The legislative history of this amendment indicates that it was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith

[18] As originally enacted, § 52-190a (a) required "the plaintiff in any medical malpractice action to conduct 'a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the [plaintiff]' and to file a certificate 'that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant.' . . . The original statute did not require the plaintiff to obtain the written opinion of a similar health care provider that there appeared to be evidence of medical negligence, but permitted the plaintiff to rely on such an opinion to support his good faith belief." (Citation omitted.) *Dias* v. *Grady*, supra, 292 Conn. 357.

the information that they had obtained from experts."[19] Id., 357–58; see also *Bennett* v. *New Milford Hospital, Inc.*, supra, 20 (discussing testimony of Attorney Michael D. Neubert on behalf of Connecticut Medical Society to effect that opinion from similar health care provider would " 'help [e]nsure that there is a reasonable basis for filing a medical malpractice case under the circumstances and . . . eliminate some of the more questionable or meritless cases filed under the present statutory scheme' ").

Put differently, the legislature, by requiring a comprehensive prelitigation inquiry, including the provision of an opinion letter by an objectively qualified health care professional in an attempt to reduce the filing of frivolous medical malpractice actions; see, e.g., *Dias* v. *Grady*, supra, 292 Conn. 357; has in effect made the prelitigation inquiry pursuant to § 52-190a (a) a significant aspect of the medical malpractice action. This is particularly so given that: (1) § 52-190a (a) requires that the opinion letter be attached to the complaint; and (2) § 52-190a (c) mandates the dismissal of cases commenced without adequate prelitigation investigations. See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 25. Thus, the diligence inquiry under § 52-592 (a) is equally applicable to an attorney's prelitigation investigation of a medical malpractice case pursuant to § 52-190a (a).

Accordingly, in determining as a factual matter whether the failure to supply an opinion letter authored

---

[19] To this end, in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 21, also released today, we concluded that the legislature's use of the phrase "similar health care provider" is to be construed narrowly because it was intended to eliminate the need for a subjective inquiry by a plaintiff into the qualifications of an opinion letter author, and that "the author of the opinion letter . . . must be a similar health care provider as that term is defined in § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)."

by a similar health care provider pursuant to § 52-190a (a) is not so "egregious" as to be considered a matter of form subject to § 52-592 (a), the trial court cannot ignore the qualifications of the opinion letter's author. Such consideration will have the effect of alleviating some of the "harshness" of the legislature's strict requirement that only "similar health care providers" may author opinion letters, which might well result in the dismissal of otherwise meritorious medical malpractice actions on technical grounds, while still achieving the purpose of § 52-190a, namely, protecting health care providers from frivolous malpractice actions.[20] *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 27. Indeed, that the opinion letter author might well be qualified to testify at the trial of the action pursuant to § 52-184c (d), regardless of the fact that he or she is not a similar health care provider as strictly defined by § 52-184c (b) or (c); see footnote 12 of this opinion; is one such factor that a trial court reasonably might consider in making the factual determinations attendant to a plaintiff's invocation of the protections of § 52-592 (a). Cf. *Bennett* v. *New Milford Hospital, Inc.*, supra,

---

[20] The plaintiffs rely on the testimony of Attorney Michael D. Neubert before the judiciary committee in support of their argument that "dismissals under the statutory revisions [to § 52-190a] were not intended to be final in all respects." We note that, in speaking in support of the bill on behalf of the Connecticut Medical Society, Attorney Neubert answered a question from Senator Edward Meyer about whether the dismissal would be "with prejudice," or whether "the plaintiff [can] come back with a new complaint?" Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5552. The plaintiffs rely on Attorney Neubert's response to the effect that a plaintiff whose complaint had been dismissed "clearly . . . could have another bite at the apple and submit another complaint with another letter or possibly respond by attaching the letter that met the requirements of the [s]tatute." Id. The value of that testimony to the plaintiffs' argument is reduced, however, by Attorney Neubert's earlier emphasis on the statute of limitations as "always an issue" with respect to commencement of a new action after a dismissal, which merely begs the question presented in this appeal, namely, whether the applicability of § 52-592 is subject to any restrictions.

8 and n.6 (describing general surgeon's extensive experience and training in emergency medicine, and qualifications to testify at trial in case alleging malpractice on part of specialist in emergency medicine, despite holding that surgeon was not statutorily permitted to author opinion letter). Thus, we conclude that a plaintiff may bring a subsequent medical malpractice action pursuant to the matter of form provision of § 52-592 (a) only when the trial court finds as a matter of fact that the failure in the first action to provide an opinion letter that satisfies § 52-190a (a) was the result of mistake, inadvertence or excusable neglect, rather than egregious conduct or gross negligence on the part of the plaintiff or his attorney.[21]

---

[21] Relying on, inter alia, *Rosario* v. *Hasak*, supra, 50 Conn. App. 632, the hospital defendants argue that adopting the plaintiffs' argument, namely, that relief pursuant to § 52-592 (a) is categorically available for all dismissals pursuant to § 52-190a (c), would have the effect of permitting a plaintiff unilaterally to extend the statute of limitations. In *Rosario*, the Appellate Court rejected a plaintiff's attempt to commence a new action pursuant to § 52-592 on the basis of the "trial court's conclusion that the plaintiff's failure to return the original complaint to court until two and one-half years after it was served could hardly be considered diligent. . . . The plaintiff commenced the fourth and final action five years after the automobile accident occurred and three years after he commenced the original action. Such egregious and blatant conduct was never intended to be condoned and sanctioned by the 'matter of form' provision of § 52-592 . . . ." Id., 639; see also id., 638 ("the result of following the plaintiff's logic would be a virtual nullification of the statute of limitations because a plaintiff would have the ability unilaterally to extend the statute of limitations indefinitely simply by failing to return a timely served complaint to the court"). In our view, *Rosario* is illustrative of the case-sensitive nature of the inquiry under § 52-592 (a); a different timeline or sequence of events with respect to the return of process in that case might well have entitled the plaintiff to invoke its protection.

We also disagree with the hospital defendants' argument, accepted by the trial court, that extending the protections of § 52-592 (a) to lapses under § 52-190a (a) would render superfluous the automatic ninety day extension provided by § 52-190a (b) to permit plaintiffs to obtain the opinion of a similar health care provider. See *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) (statutes "must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant" [internal quotation marks omitted]); see also footnote 2 of this opinion

Under the facts found by the trial court, we agree with the hospital defendants that § 52-592 (a) did not permit the plaintiffs to bring this action against them after dismissal of the original action. The trial court found that the "decision to engage . . . Williamson to review the file and to provide a written opinion of negligence is *inexplicable*. Even a cursory reading of § 52-190a would have revealed that . . . Williamson did not qualify as a similar health care provider." (Emphasis added.) The trial court's finding is particularly apt given that Williamson is neither a physician nor a social worker, and even her psychiatric nursing experience was scant. See footnote 11 of this opinion. Thus, we agree with the trial court's determination that the "plaintiffs' lack of diligence in selecting an appropriate person or persons to review the case for malpractice can only be characterized as blatant and egregious conduct which was never intended to be condoned and sanctioned by the 'matter of form' provision of § 52-592." Cf. *Bates* v. *Gilbert*, 479 Mich. 451, 462, 736 N.W.2d 566 (2007) (concluding that affidavit of merit was defective

for the text of General Statutes (Rev. to 2005) § 52-190a (b), as amended by P.A. 05-275, § 2. First, a plaintiff must seek relief under § 52-190a (b) by petitioning the appropriate court clerk for the automatic ninety day extension of the statute of limitations to obtain time to make the required inquiry in a situation where he recognizes the need to do so prior to commencing the action, but is faced with an expiring statute of limitations. Section 52-190a (b) does nothing to aid the plaintiff whose prelitigation inquiry is challenged subsequent to the filing of the action. Second, the ninety day extension under § 52-190a (b) is automatic; the clerk's grant of the required petition is a ministerial act. Cf. *Morrison* v. *Parker*, 261 Conn. 545, 551, 804 A.2d 777 (2002) ("[E]ither a judge or the clerk of the Superior Court is statutorily authorized to allow and to sign a writ of error. The fact that the statute grants such authority to the clerk of the court is compelling evidence that the act is ministerial in nature."). In contrast, a plaintiff seeking relief under the matter of form provision of § 52-592 (a) does so at his or her peril, given the case-sensitive nature of the determination that the failure as a matter of form was not based on "egregious" conduct by the party or counsel. See also *Ruddock* v. *Burrowes*, supra, 243 Conn. 577 (noting that party incurs delay and additional legal fees and expenses when commencing new action pursuant to § 52-592 following disciplinary dismissal).

requiring dismissal because, "[g]iven the law at the time [the] plaintiff filed her affidavit of merit, together with the fact that optometry is a distinct health profession from ophthalmology, [the] plaintiff's counsel could not have reasonably believed that [the] plaintiff's expert, an ophthalmologist, was qualified . . . to address the standard of practice or care applicable to [the] defendant, an optometrist"). Accordingly, the trial court properly rendered judgment for the hospital defendants.

Finally, we address briefly the plaintiffs' appeal from the trial court's decision to dismiss the action against the individual defendants for failure to supply the written opinion of a similar health care provider pursuant to § 52-190a (a). The only briefing with respect to the individual defendants is the plaintiffs' novel claim, raised for the first time in their reply brief and then at oral argument before this court, that the consolidation of the appeals pursuant to Practice Book § 61-7 (b);[22] see footnote 4 of this opinion; requires reversal of the judgment with respect to the individual defendants, should we also reverse the judgment as to the hospital

[22] Practice Book § 61-7 provides in relevant part: "(b) (1) The supreme court, on motion of any party or on its own motion may order that appeals pending in the supreme court be consolidated.

"(2) When an appeal pending in the supreme court involves the same cause of action, transaction or occurrence as an appeal pending in the appellate court, the supreme court may, on motion of any party or on its own motion, order that the appeals be consolidated in the supreme court. The court may order consolidation at any time before the assignment of the appeals for hearing.

"(3) The appellate court, on motion of any party or on its own motion, may order that appeals pending in the appellate court be consolidated.

"(4) There shall be no refund of fees if appeals are consolidated.

"(c) Whenever appeals are jointly filed or are consolidated, only a single record shall be prepared. In addition, all appellants must file a single, consolidated brief and all appellees must file a single, consolidated brief; provided, however, that any party may file a request in writing to the chief justice or chief judge, as the case may be, for permission to file a separate brief if the joint parties cannot agree upon the contents of the joint brief or to brief issues which are not common to the joint parties."

defendants.[23] We agree with the individual defendants' contention at oral argument before this court that we should decline to consider the plaintiffs' appellate claims with respect to the individual defendants. Although any relief on the merits nevertheless is foreclosed by our decision in the companion case, *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 25, the plaintiffs also have abandoned their claims with respect to the individual defendants by raising them for the first time in their reply brief, which is an impermissible practice.[24] See, e.g., *State* v. *Richardson*, 291 Conn. 426, 431, 969 A.2d 166 (2009).

The judgments are affirmed.

In this opinion the other justices concurred.

---

[23] Specifically, the plaintiffs posit that, following reversal of the judgment against the hospital defendants, they should be free to amend the complaint in the action pursuant to § 52-592 to include the individual defendants as parties to the case.

[24] The plaintiffs represented at oral argument before this court that, subsequent to the trial court's order dismissing the case against the individual defendants pursuant to § 52-190a (c), they commenced a new action pursuant to § 52-592 (a) against them in the Litchfield judicial district. We are troubled to note, however, that, according to the civil case inquiry on the judicial branch website, no such action is pending in the Litchfield judicial district.